UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY TUCKER**, | ) | Case No. 1:07 CV 1035 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **RICHARD GANSHIMER**, et. al. | ) | (Regarding ECF ## 40-2, 46, 47, 49) |
| | ) | |
| Defendants, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Anthony Tucker is a prisoner at Ohio's Lake Erie Correctional Institution [LECI] who suffers from hammertoe. He has filed this action against the warden and medical staff at LECI alleging civil rights infringement under 42 U.S.C. §1983 due to cruel and unusual punishment in violation of the Eighth Amendment inflicted as a result of inadequate medical care and under the Americans with Disabilities Act of 1990 [ADA]. His claims are summarized in his prison grievance where he stated:

> 1. My feet hurt everyday almost. 2. This medical dept. gave me tennis shoes and boots that were too small and made me wear them for 29 months, after I repeatedly complained to medical and staff that they were too small and 3. They refuse to let me see the doctor on Jan. 2003, but now in April 2005 the foot doctor states that I need major sugery (*sic*) on both my feet [.]
> (Complaint Ex. M)

After conducting *in forma pauperis* review, Judge Economus ordered that the case proceed on Tucker's ADA allegations against warden Richard Gansheimer in his official capacity only, and that the allegations of Eighth Amendment violation against the medical staff of Dr. Gombeh-Alie, and Nurse Teare , and their employer First Correctional Medical. (Memorandum opinion 7/25/07, ECF # 4). Following the conclusion of the undersigned's supervision of discovery, Tucker moved

1: 07 CV 1035                                                        2

for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (ECF # 46). His motion was pursued by the summary judgment motions from the warden and medical staff (ECF ## 47, 49).

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment.  *Anderson*, 477 U.S. at 255.  The burden is upon the movant to demonstrate the absence of a genuine issue of material fact.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979).  However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The nonmoving party must produce significant probative evidence in support of the complaint to defeat

1: 07 CV 1035                                             3

the motion for summary judgment through affidavits or admissions on file. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993). In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340.

In this case there is a medical record consisting of Tucker's charts orders of consultative examinations and physicians' reports, and a prison record consisting of Tucker's grievances and requests ["kites"] and the responses from prison officials. Tucker does not challenge the veracity or accuracy of these records, and in fact relies on them to support his motion for summary judgment. However, statements in his "uncontested facts" in several instances do not align with this record. In a situation such as this, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, - U.S. -, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)

*ADA Claim:*

Tucker specifically invoked Title I of the ADA, "42 U.S.C. 12101-12131," which governs discrimination against the disabled in employment. The Court, however, interpreted his complaint in its *in forma pauperis* order more sensibly as ADA Title II matter of denial of public services to the disabled ( See 42 U.S.C. §12132 et seq., and *U.S. v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006)( ADA Title II validly abrogates state sovereign immunity allowing state

1:07 CV1035                                                           4

prisoner to bring a private cause of action for damages against the state) ). This claim fails because Tucker fails to demonstrate "disability" due to a "substantial" limitation of a major life activity as defined under 42 U.S.C. §12102(2)(A). There must be evidence of major functional restriction in a life activity such as walking, seeing, hearing or performing manual tasks. *Toyota Motor Mfg. Co. v Williams*, 534 U.S. 184, 195-97, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of medical diagnosis of an impairment."*Toyota Motor Mfg. Co.*, 534 U.S. at 198.

Tucker has only shown that he received a bottom bunk restriction due to his hammertoe condition. This fails to evidence a restriction on a major life activity. For example in *Pellack v. Thorek Hosp. & Medical Hospital*, 9 F. Supp.2d 984 (N.D. Ill. 1998), disability due to hammertoe was established by a sedentary work limitation. Likewise, in *Brown v. Woodford*, 2007 WL 4169904 (N.D. Cal.), a club-footed prisoner's activities were limited by the inability to walk more than 100 yards or stand more than 15 minutes at a time. The same definition of a "substantial" limitation of a major life activity persists through all three titles of the ADA. *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 589 & n.2, 119 S.Ct. 2176, 2182 & n.2, 144 L.Ed.2d 540 (1999). Tucker presumably suffers from discomfort when climbing bunk ladders. This does not demonstrate a substantial restriction on a major life activity to qualify as suffering from a "disability" as that term is defined under the ADA. Accordingly, with respect to the ADA claims asserted against the warden in his official capacity, Warden Gansheimer's motion for summary judgment should be granted and Tucker's motion denied and the ADA claim dismissed.

1:07 CV1035                                                  5

*Eighth Amendment Claims under 42 U.S.C. §1983:*

The law regarding prisoner Eighth Amendment medical claims is capsulized in *Perez v. Oakland County*:

> Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." . . . The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII.
>
> As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs, including psychological needs. See *Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," and thus courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir.2004) (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990)), reh'g en banc denied. Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference. *Estelle*, 429 U.S. at 105-06, 97 S.Ct. 285.
>
> "Deliberate indifference" as analyzed by this court has both an objective and a subjective component. See *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001). In cases involving an inmate's medical needs, the need "must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. The subjective component requires that an official who actually knew of the serious medical need possessed "a sufficiently culpable state of mind in denying medical care." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir.2005) (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that

1:07 CV1035                                                       6

>harm will result.' " *Id*. at 813, 114 S.Ct. 1970 (quoting *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970). The Supreme Court has also said, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970.
>
>     This court has held that "deliberate indifference may be established by a showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 843 (6th Cir.2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999)). However, the 11th Circuit cases upon which *Terrance* was based note that a showing of "grossly inadequate care" satisfies only the objective prong of the "deliberate indifference" standard. Plaintiff must still present evidence of a prison official's subjective awareness of, and disregard for, a prisoner's serious medical needs. See *Campbell v. Sikes*, 169 F.3d 1353, 1364-65 & n. 9 (11th Cir.1999).

*Perez v. Oakland County,* 466 F.3d 416, 423-424 (6th Cir. 2006), *cert. denied*, 128 S.Ct. 166, 169 L.Ed.2d 33 (2007).

Tucker is fortunate that his case is not in the Tenth Circuit. Precedent from *Henderson v. Secretary of Corrections*, 518 F.2d 694 (10th Cir. 1975), holds that a state prisoner suffering from bilateral hammertoe, who had been prescribed orthopedic footwear which was never provided, failed to state a claim of inadequate medical care. Thus objectively there would be no deliberate indifference.  The Sixth Circuit, however, is more focused on pain, and has stated, "that a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering (footnote omitted)." *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976). Nonetheless outside of the prescribed footwear setting, even within the Sixth Circuit a complaint of ill-fitting shoes was found not to constitute a deprivation of the "minimal civilized measure of life's necessities," for it to be objectively sufficiently serious. *Jones v. Hood*, 2006 WL 1984274, at * 8 (E.D. Mich),

1:07 CV1035                                                    7

citing *Wilson*, 501 U.S. at 298. Tucker carries a heavy burden of demonstrating grossly inadequate medical care to meet the objective prong of deliberate indifference to a serious medical need.

Tucker's first claim is that prior to his transfer to LECI a consultative podiatry examination had been ordered, but instead at LECI he was seen by Dr. Gombeh-Alie at the prison, who ordered size 14 tennis shoes and boots without properly sizing him.[1] The medical staff, however, states that Tucker has had hammertoe since at least 1995 and that in June 1997 Tucker's corrective surgery at the Ohio State University Hospital orthopedic department was cancelled because it was "low priority" and size 14 wide boots were ordered by the podiatrist at that time. Tucker does not claim he wore a larger size prior to Dr. Gombeh-Alie's prescription, but only that the size 14 footwear he received at LECI were "too small." There really is no disputed fact to set out a medical claim since judicial notice can be taken that footwear sizing is not precise and varies among manufacturers. From this perspective, Tucker's claim of improper shoe sizing does not establish wrongdoing by the doctor, who continued Tucker's earlier prescription from a podiatrist for size 14 footwear.

Further even if this matter were deemed to raise an Eighth Amendment claim, the decision to provide medical care "in house" without referral to an outside specialist is merely a

---

[1] The doctor and Nurse Teare are employed by First Correctional Medical, but they and their employer nonetheless are state actors since a private physician providing medical services to state prisoners through a corporation and the corporation under contract with the State act under color of state law due to the State's constitutional duty to provide adequate medical treatment to those in its custody. *West v. Atkins*, 487 U.S. 42, 55-57, 108 S.Ct. 2250, 101 L. Ed.2d 40 (1988); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993).

1:07 CV1035                                                8

dispute over medical judgment.² "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. [A prisoner] is not entitled to the best care possible ." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). At best Tucker asserts a claim of negligence and "[n]egligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference. *Estelle*, 429 U.S. at 105-06, 97 S.Ct. 285." *Perez,* 466 F.3d at 423. At this point Tucker fails to objectively show deliberate indifference to a serious medical need.

Tucker attempts to demonstrate deliberate indifference with his second claim that he often complained of his hoes hurting his feet "even after plaintiff brought tennis shoes back to the medical to Nurse Teare, who told plaintiff he would have to keep them for two years because he had sign[ed] for them." (Tucker's Uncontested Facts # 11). Frequent contact and complaints to the medical staff about unmet medical needs would tend to demonstrate deliberate indifference, and if the omissions are attributable to those medical staff members whose actions represent official corporate policy, then their corporate employer may also be liable.  See *Hicks v. Frey*, 992 F.2d 1450, 1456 (6th Cir. 1993).

Warden Gansheimer states that Tucker had medical visits that specifically included foot care on November 20, 2002, December 19, 2002, January 28, 2003, January 30, 2003, February 16, 2003, February 24, 2003, March 16, 2003, March 17, 2003, June 25, 2004, February 2, 2005,

---

² "But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act. (footnote omitted)."
*Estelle v. Gamble,* 429 U.S. at 107, 97 S.Ct. at 293.

1:07 CV1035                                                        9

May 18, 2005, June 2, 2005, September 21, 2005 and October 5, 2005. (Gansheimer's Certificate of Uncontested Facts #4, ECF # 48). The frequency of Tucker's medical visits does not necessarily mean that he expressed dissatisfaction with foot care on all these occasions. Tucker's own exhibits consisting of the medical charts, in fact, detract from his frequent complainer assertion. Tucker's Exhibit 4 shows that he signed for his tennis shoes on February 24, 2003, and first complained to medical staff that his shoes were hurting his feet on March 16, 2003. On that date he sent a kite to the doctor complaining that the width of the left shoe was smaller than on the right, and the right heel hurt his foot. (Tucker's Exhibit 9). The medical staff explain that on the following day he was placed in segregation where he was not permitted to have shoes. Tucker was later examined on March 26, 2003, and told to bring his shoes to medical after he was released from segregation. (And see Tucker's Exhibit 10). The medical staff states that when Tucker was next seen on June 16, 2003, he did not complain about his feet or shoes. Around this time Dr. Gombeh-Alie left LECI.

      Tucker's Exhibit 6 shows that not until June 27, 2004 did he request new tennis shoes. Tucker states that Nurse Teare told him that policy required him to keep his shoes for two years. It was charted that the shoes were provided in February 2003, and started to show wear at small toes. No complaint of foot pain was charted. Instead, the primary issue at that time was Tucker's 20/50 vision test. Tucker was to be sent to a physician for optometrist request, and glasses were issued pending the optometrist request. (Note, Exhibit 6 charts that prescription glasses were received by Tucker from Dr. Gabriel on August 17, 2004).

1:07 CV1035                                          10

Tucker's Complaint Exhibit A is the February 10, 2005 denial of his informal request to First Correctional Medical for new shoes. After this Tucker's Complaint Exhibit B shows that he sent a kite to Ms. Bobbitt that he "qualified" for new shoes but was denied without seeing a doctor. Her response was to contact Nurse Teare, which he did. Tucker's Complaint Exhibit C shows that Nurse Teare responded on February 17, 2005 that the doctor had requested a podiatry consult on February 2, 2005, and that new tennis shoes had been requested. Tucker was also told to check back later on the status of this request. Tucker's Complaint Exhibit D shows that Nurse Teare told Tucker he needed to send a kite requesting bigger boots, which he did. Tucker was informed by the quartermaster that there were no 14's or 15's available, but Tucker was on the "boot list."

The medical staff similarly relates that on February 2, 2005, Dr. Washnitzer ordered "high top" tennis shoes and a podiatry consult giving the urgency of the consult as "routine" meaning within three to twelve weeks. On April 14, 2005 Tucker was examined by podiatrist Dr. Rung, who recommended extra depth shoes as the first option and that the next line of treatment would be surgical correction. (And see Tucker's Exhibits 5, 8, 11).

The next charted medical note in Tucker's Exhibit 8 is from May 18, 2005, and records RN Supervisor Misch's compliance:

> Shoe order taxed to Union Supply. Inmate insisted the shoe ordered is the one he wants despite it's (*sic*) coming only in Medium. Opportunity given for him to order wider shoes but he declined .

1:07 CV1035                                        11

The next medical note charted states that on June 2, 2005, Tucker received his shoe order. (Tucker's Exhibit 8, and Complaint Exhibit L). Tucker nonetheless filed the appeal which is quoted at the beginning of this report about the denial of medical care. (See Complaint Exhibit M).

Tucker received another podiatry consult with Dr. Rung on July 7, 2005. (Tucker's Exhibit 12). The doctor determined that Tucker needed to wear size 15 footwear, B width on the right and C width on the left.

Tucker also refers to his Complaint Exhibit N, which is Nurse Warner's July 28, 2005 response to his complaint about not having received properly fitted shoes yet. Tucker was told that Nurse Teare stated that properly fitted shoes are in the process of being ordered. Tucker received shoes fitted tho these specifications on September 6, 2005. (See Complaint pg. 4).

Thereafter, Tucker's Exhibit 13 shows that he sent a kite on September 21, 2005, to medical complaining that his feet hurt.

Tucker's exhibits do not objectively support deliberate indifference to serious medical needs nor does he support his assertion that he continually complained about foot pain to the medical staff in order to show deliberate indifference subjectively. His complaints of pain from March 2003 were neither repeated frequently nor clearly in his own exhibits. Instead the record shows that Tucker requested new shoes over one year later, but the concern was over wear, not fit, and true to the policy that Tucker claims existed, after two years, the medical staff began the

1:07 CV1035                                                              12

procedure to procure Tucker new footwear. The medical staff certainly cannot be held responsible for the lack of extra large footwear sizes at the time of requisition, and Tucker has failed to establish that the medical staff had a culpable state of mind to cause Tucker pain by delaying a podiatry examination.

Tucker's assertion that there was a two-year shoe replacement policy actually negates the medical staff's alleged deliberate indifference. Tucker's shoes were replaced in February 2005 following his June 2004 complaint about worn shoes and his grievances that he was "qualified" for new footwear. This scheduled replacement had no nexus to complaints about medical needs not being met. Granted the record demonstrates that Tucker did begin to complain about ill-fitting shoes afterward. However, two podiatry consults were provided, Tucker was complaining about his feet hurting due to a shoe order which the medical staff questioned, and Tucker was provided with prescribed footwear. Once a new prescription was issued there was delay in obtaining the extra depth size 15 footwear. However, Tucker does not demonstrate that this delay was intentional. As explained in *Wilson v. Seiter,* "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent ... diagnos[is]," simply fail to establish the requisite culpable state of mind.(citation omitted)." *Id*., 501 U.S. at 297, 111 S.Ct. at 2323.

This leaves Tucker's final claim of denial of corrective surgery for his hammertoe condition. The medical staff relates that Dr. Rung recommended extra depth shoes as the first line of treatment and that the next line of treatment would be surgical correction. This statement

1:07 CV1035                                             13

is consistent with Tucker's exhibits (See Exhibits 5, 11, 12). Tucker states that he was properly sized by Dr. Rung, but the focus of his final argument is that he is being denied corrective surgery. He states that Nurse Teare was in the room when Dr. Rung recommended surgery, and that the shoes were prescribed for comfort only and "not as a stipulation for the surgery that the plaintiff needs." His complaint accuses Nurse Teare of defying Dr. Rungs's surgical recommendation with her alleged statement, "We'll put down tennis shoes as the first option." (See Complaint pg.4). Tucker's own exhibits, though, do not provide factual support for his claim of a manipulated diagnosis, and consequently this allegation has not been demonstrated for purposes of summary judgment.  See *Scott v. Harris*, 127 S.Ct. at 1776.

Granted, the medical staff did not contemplate surgery, but surgery was the second option. Dr. Rung's alternative recommendation for surgery does not provide even a basis for a dispute over professional medical judgment as in instances where prison medical staff override a specialist's recommendation. See *Davila-Bajana v. Sherman*, 2008 WL 2127132 (3rd Cir. )(medical treatment without surgical correction did not violate Eighth Amendment when surgeon gave prisoner cortisone injection and prescribed stretching exercises and indicated that if the hammertoe deformity persisted then it may need surgical correction.). Since Tucker has failed to show an objective basis for deliberate indifference the adage applies that, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Perez v. Oakland County,*  466 F.3d at 434 , quoting *Westlake v. Lucas*, 537 F.2d at 860 n. 5.

1:07 CV1035                                                            14

Further, if Tucker's third claim is construed as delay of treatment, Tucker has failed to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001), quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). Tucker only claims in his complaint that he has been taking "pain medication for the pain that I now have regularly in my feet." (Complaint pg. 4).  However, he does not support his allegation in his motion nor does the record demonstrate that pain medication became necessary due to the medical staff's selection of footwear or Tucker's own choice of footwear, when he ignored the medical staff's advice on shoe selection.  Under the record established, there are may variables as to why Tucker claims that he now needs pain medication.  In any event, Tucker's statements and the record do not suffice to establish"grossly inadequate care" necessary for the objective component of deliberate indifference. See *Perez*, 466 F.3d at 424. There is no genuine issue of material fact relevant to Tucker's claims of medical indifference. Accordingly the motion for summary judgment from First Correctional Medical, Nurse Teare and Dr. Gombeh-Alie should be granted (ECF # 49) and Tucker's motion denied and his claims under 42 U.S.C. §1983 dismissed. (ECF # 46)

*Motion for Preliminary Injunction for Medical Relief:*

Tucker moves for a judicial order compelling First Correctional Medical to send him for a podiatry consult (ECF # 40). He further complains that he has not received the April 2005 diagnosis from Dr. Rung, and that he is experiencing more foot pain. Well, Tucker has received Dr. Rung's report, which recommended surgery, but only as the second option. Moreover, "[t]he

1:07 CV1035                                                  15

purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.' *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007). Obviously, Tucker's request to see a podiatrist goes beyond maintaining the *status quo*. Further, as the medical staff argues four factors must be considered when ruling on a request for a preliminary injunction:

> (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits,
> (2) whether the movant has shown that irreparable injury will occur absent the injunction,
> (3) whether issuance of the preliminary injunction could substantially harm third parties, and
> (4) whether the public interest would be served by issuing the preliminary injunction.
> See *NAACP v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir.1989).

For the reasons provided in the analysis of the motions for summary judgment, Tucker has not shown a strong or substantial likelihood or probability of success on the merits. The adverse ruling on summary judgment stands in the way of a preliminary injunction since the movant must show as part of the first factor that there are serious, substantial, difficult, and doubtful questions for judicial resolution in litigation.  See *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985); *Certified Restoration Dry Cleaning Network, L.L.C.* 511 F.3d at 543. Secondly, because there is no genuine issue of disputed fact, no hearing is required before denial of this motion. See

*Detroit & Toledo Shore Line R.R. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 357 F.2d 152, 153-54 (6th Cir.1966) (finding that, because there was a controversy over the facts, a hearing should have been held before issuing a preliminary injunction); *Carpenters' District*

1:07 CV1035                                                                 16

*Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) (finding no hearing to be required "if there is no dispute between the parties about the facts," but requiring a hearing "if the allegations of a complaint are denied by a defendant"). Accordingly, it is recommended that Tucker's motion for preliminary injunction be denied without hearing because it concerns matters beyond maintaining the *status quo,* and his case is meritless. (ECF # 40).

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons plaintiff's motion for summary judgment should be denied (ECF # 46) and the competing motions from defendants granted (ECF# 47, 49),and the case dismissed with judgment entered for the defendants. Further, plaintiff's motion for a preliminary injunction should also be denied. (ECF # 40).

                                                        s/James S. Gallas
                                               United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 30, 2008

1:07 CV1035 17